UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHAIM MEYER KLEIN, an individual and
MORDECAI KLEIN, an individual on behalf of all
those similarly situated,

                        Plaintiff,

    vs.

DEUTSCHE LUFTHANSA AG d/b/a
LUFTHANSA AIRLINE, FRANKFURT AIRPORT,
FRAPORT AG FRANKFURT AIRPORT
SERVICES WORLWIDE, FRAPORT NEW YORK,
INC., and FRAPORT USA INC.,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**Reply Memorandum of Law of Deutsche Lufthansa AG in Further Support of its Motion to Dismiss for Failure to State a Claim for which Relief May be Granted**

**TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................. 1

Argument ..................................................................................................................................... 1

I  Plaintiffs have failed to plead a claim under the Montreal Convention. ........................... 1

    A.  There is no reasonable dispute that Plaintiffs were engaged in the "operations of embarking" at the time of the alleged incident. .............................. 1

    B.  Article 19 of the Montreal Convention should govern Plaintiffs' claims for delay. ................................................................................................................... 4

II  Notwithstanding the applicability of the Montreal Convention, Plaintiffs' other federal claims are not recoverable. ................................................................................... 5

    A.  There is no dispute that the conduct alleged to be in violation of Title VI occurred in Frankfurt, Germany. .......................................................................... 5

    B.  There is no private right of action under 22 U.S.C. §§ 2731 or 6412 ..................... 6

III  Plaintiffs should not be permitted to replead. ................................................................... 8

Conclusion ................................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ...................................................................................................... 7

*Bird v. Lewis & Clark Coll.*,
    104 F. Supp. 2d 1271 (D. Or. 2000), *aff'd*, 303 F.3d 1015 (9th Cir. 2002) .............. 6

*Buonocore v. Trans World Airlines, Inc.*,
    900 F.2d 8 (2d Cir. 1990) ..................................................................................... 1, 2, 3

*Dance v. Town of Southampton*,
    95 A.D.2d 442 (2d Dep't 1983) ................................................................................... 7

*Day v. Trans World Airlines, Inc.*,
    528 F.2d 31 (2d Cir. 1975) ........................................................................................... 2

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002) ........................................................................................... 9

*Fields v. BWIA Int'l Airways Ltd.*,
    2000 WL 1091129 (E.D.N.Y. July 7, 2000) ............................................................... 4

*Gala v. City of New York*,
    No. 20-cv-5549 (BMC), 2021 WL 1700315 (E.D.N.Y. Apr. 29, 2021) ................ 9

*German v. Federal Home Loan Mortgage Corp.*,
    896 F. Supp. 1385 (S.D.N.Y. 1995) ............................................................................ 7

*Hayden v. Cnty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999) ........................................................................................... 8

*Ikekpeazu v. Air France*,
    No. 04-cv-711, 2004 WL 2810063 (D. Conn. Dec. 6, 2004) .................................. 5

*King v. Am. Airlines, Inc.*,
    284 F.3d 352 (2d Cir. 2002) ................................................................................ 3, 4, 9

*King v. Bd. of Control of E. Mich. Univ.*,
    221 F. Supp. 2d 783 (E.D. Mich. 2002) ..................................................................... 6

*Kruger v. Virgin Atl. Airways, Ltd.*,
    976 F. Supp. 2d 290 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014) ..... 2, 3

*Lynda v. JetBlue Airways Corp.*,
   No. 20-cv-47 (BMC), 2020 WL 3104069 (E.D.N.Y. June 22, 2020) ........................................7

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ................................................................................................................7

*Matveychuk v. Deutsche Lufthansa, AG*,
   08–CV–3108, 2010 WL 3540921 (E.D.N.Y. Sept. 7, 2010) ...................................................2

*Mizyed v. Delta Airlines, Inc.*,
   No. 12-382, 2012 WL 1672810 (E.D. La. May 14, 2012) ......................................................4

*Oparaji v. Virgin Atl. Airways, Ltd.*,
   No. 04-cv-1554, 2006 WL 2708034 (E.D.N.Y. Sept. 19, 2006) .............................................4

*Paradis v. Ghana Airways Ltd.*,
   348 F. Supp. 2d 106 (S.D.N.Y. 2004) .................................................................................2, 4

*Rajcooar v. Air India Ltd.*,
   89 F. Supp. 2d 324 (E.D.N.Y. 2000) .......................................................................................2

*Safa v. Deutsche Lufthansa Aktiengesellschaft, Inc.*,
   42 F. Supp. 3d 436 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 82 (2d Cir. 2015) ............................2

*Shabotinsky v. Deutsche Lufthansa AG*,
   245 F. Supp. 3d 1018 (N.D. Ill. 2017) .....................................................................................5

*TechnoMarine S.A. v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014) ....................................................................................................8

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) ..................................................................................................................7

*Vumbaca v. Terminal One Group Ass'n L.P.*,
   859 F. Supp. 2d 343, 362 (E.D.N.Y. 2012) .............................................................................5

**Statutes**

22 U.S.C. § 2731 ..........................................................................................................6, 7, 8

22 U.S.C. § 6412 ..........................................................................................................6, 7, 8

42 U.S.C. § 2000d ............................................................................................................5, 6

**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................................9

Federal Rule of Civil Procedure Rule 23 ..........................................................................1

Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, opened for signature on May 28, 1999, reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27, 400-59, 1999 WL 33292734 (1999). ................................................................................................... *passim*

**Preliminary Statement**

Defendant Deutsche Lufthansa AG ("Lufthansa") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss the First Amended Complaint ("the Complaint") for failure to state a claim for which relief may be granted.

**Argument**

**I**

**Plaintiffs have failed to plead a claim under the Montreal Convention.**

A.   There is no reasonable dispute that Plaintiffs were engaged in the "operations of embarking" at the time of the alleged incident.

The Montreal Convention exclusively governs claims for injuries caused by events that occur on board an aircraft "or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17(1). A plain reading of the allegations in the Complaint confirms that Plaintiffs were engaged in operations of embarking at the time of the alleged incident: Plaintiffs allege that the incident occurred while Plaintiffs were "at the gate in Frankfurt" and they were "anticipating the second leg of the trip from Frankfurt to Budapest" when gate agents "began calling passenger's [*sic*] names to board." Dkt. 2 ¶¶ 22-23. Plaintiffs also allege that certain passengers were "allowed to board" (*id.*), while certain passengers, like Plaintiffs, "were called and then rejected." *Id.* ¶ 24.[1]

The Second Circuit applies a "flexible," multi-factor test to determine whether a passenger was engaged "'in the course of any of the operations of embarking'" at the time of the alleged incident. *Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 10 (2d Cir. 1990) (quoting Montreal Convention, art. 17(1)). "The factors to be considered are: (1) the activity of

---

[1] Plaintiffs assert that this case is a "putative class action matter." Dkt. 12 at 1. Although the caption and the opening paragraph of the Complaint contain the language, "on behalf of all those similarly situated," there are no allegations in the Complaint regarding a putative class, and Plaintiffs do not attempt to comply with the Rule 23 pleading requirements. *See* Fed. R. Civ. P. 23.

1

the passengers at the time of the accident; (2) the restrictions, if any, on their movement; (3) the imminence of actual boarding; and (4) the physical proximity of the passengers to the gate." *Id.*

In *Buonocore*, the Second Circuit held that the Warsaw Convention did not apply to a terrorist attack where the passenger was not near his gate or engaged in any boarding activities when the incident occurred. 900 F.2d at 10. The *Buonocore* court distinguished the case from *Day v. Trans World Airlines*, another case involving a terrorist attack, in which the Second Circuit held that the Warsaw Convention did apply because the passengers were at the gate within minutes of boarding and "risked missing [their] flight if they strayed." *Id.* (citing *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir. 1975)).[2]

Applying the *Buonocore* factors, courts in this Circuit "have consistently held that Article 17 covers injuries sustained close in time to the boarding process and in areas that are near departure gates and limited to ticketed passengers." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 320 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014) (citation omitted); *Rajcooar v. Air India Ltd.*, 89 F. Supp. 2d 324, 327-28 (E.D.N.Y. 2000) (holding that a passenger who sustained a heart attack while he was proceeding to the departure gate for his connecting flight was engaged in the course of embarking). Additionally, "[t]he fact that a passenger was denied permission to board does not preclude a finding that she was engaged in the process of embarking." *Kruger*, 976 F. Supp. 2d at 320; *see also Matveychuk v. Deutsche Lufthansa, AG*, 08–CV–3108, 2010 WL 3540921, at *3 (E.D.N.Y. Sept. 7, 2010) (holding that Article 17 governed claim where injuries occurred in the airport bathroom after plaintiff missed

---

[2] Because the Montreal Convention came into force more recently than the Warsaw Convention, courts rely on cases interpreting similar provisions of the earlier Warsaw Convention where the equivalent provision in the Montreal Convention is substantively the same. *Safa v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 42 F. Supp. 3d 436, 441 (E.D.N.Y. 2014), *aff'd*, 621 F. App'x 82 (2d Cir. 2015); *see also Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (noting that the Montreal Convention and the Warsaw Convention "have substantially the same preemptive effect").

her connecting flight because boarding gate had closed); *King v. Am. Airlines, Inc.*, 284 F.3d 352, 359 (2d Cir. 2002) (holding that the Warsaw Convention applied to claims of discriminatory bumping).

In this case, the *Buonocore* factors support a finding that Plaintiffs were engaged "in the course of any of the operations of embarking" at the time of the alleged denial of boarding. As to the first factor, Plaintiffs had assembled at the boarding gate for their connecting flight with the express purpose of boarding the flight at the time of the alleged incident. Dkt. 2 ¶¶ 22-23. As to the second factor, Plaintiffs' movement was restricted because Lufthansa personnel were actively boarding passengers on the subject flight (*id.* ¶ 23) and, thus, Plaintiffs risked missing their flight if they strayed from the gate. *See Kruger*, 976 F. Supp. 2d at 320 (explaining that the risk of missing a flight "can serve as an implied restriction on [a passenger's] movement"). As to the third factor, actual boarding of the flight was not only imminent but ongoing, as Plaintiffs allege that Lufthansa was actively boarding passengers at the time of the alleged incident; "that [Plaintiffs were] denied boarding does not affect the imminence of boarding." *Id.* at 302. As to the fourth factor, Plaintiffs allege they were "at the gate" when Lufthansa staff were "calling passenger's [*sic*] names to board." Dkt. 2 ¶ 23.

Plaintiffs seem to argue that they could not have been embarking because Plaintiffs were not on board the aircraft at the time of the incident and because Defendant's conduct or police presence prevented them from engaging in the operations of embarking. Yet courts routinely hold that claims alleging refusal to board, including because of police involvement, are governed by the Montreal Convention. *See Kruger*, 976 F. Supp. 2d at 302-303 (holding that Plaintiff was embarking because she "was at or near the gate" when a flight attendant spoke with the police and when plaintiff was arrested, and because "the check in desk for [the gate] is the place in

which alleged misconduct by the airline led to her arrest"); *see also King*, 284 F.3d at 357; *Mizyed v. Delta Airlines, Inc.*, No. 12-382, 2012 WL 1672810, at *3 (E.D. La. May 14, 2012). There are no cases holding that physical entry on board the aircraft is required to establish application of the Montreal Convention.

For these reasons, Plaintiffs were engaged in "any of the operations of embarking" at the time of the alleged incident and, therefore, their claims are within the substantive scope of Article 17 of the Montreal Convention.

**B.      Article 19 of the Montreal Convention should govern Plaintiffs' claims for delay.**

As Plaintiffs correctly note, courts distinguish between claims involving "delay," which are governed by Article 19 the Montreal Convention, and claims involving "non-performance," which are not within the scope of the Montreal Convention and are governed by state law.

Plaintiffs allege in the Complaint that Lufthansa personnel informed them that they would not be permitted to travel "for the day," and further that Plaintiffs immediately made alternative travel plans. Dkt. 2 ¶ 25. Courts in the Second Circuit generally construe claims as arising under Article 19 if the carrier ultimately provided the passenger with the transportation or if the plaintiff refused a later flight or secured alternative transportation without giving the carrier the opportunity to provide such alternative transportation. *See, e.g.*, *Fields v. BWIA Int'l Airways Ltd.*, 2000 WL 1091129, at *5 (E.D.N.Y. July 7, 2000) (holding that Plaintiff "may not circumvent Article 19" where airline "performed its obligations under the contract (albeit one day late)"); *Oparaji v. Virgin Atl. Airways, Ltd.*, No. 04-cv-1554, 2006 WL 2708034, at *4 (E.D.N.Y. Sept. 19, 2006) (holding that plaintiff's claim was one for delay because he secured alternate transportation without waiting to find out whether the air carrier would transport him); *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 114 (S.D.N.Y. 2004) (holding that plaintiff

could not maintain a cause of action for breach of contract because he "responded to [the] delay . . . by booking alternative flights"); *Ikekpeazu v. Air France*, No. 04-cv-711, 2004 WL 2810063, at *2 (D. Conn. Dec. 6, 2004) (applying Article 19 of the Warsaw Convention to plaintiff's state law claims arising from a six-day delay in transportation, which resulted from an unidentified "security problem" with plaintiff's passport); *see also Vumbaca v. Terminal One Group Ass'n L.P.*, 859 F. Supp. 2d 343, 366 (E.D.N.Y. 2012) (explaining that "[t]he cases consider 'delay' under Article 19 to mean that the air carrier properly delivered baggage or persons to the appropriate destination but did so in an untimely manner"); *Shabotinsky v. Deutsche Lufthansa AG*, 245 F. Supp. 3d 1018, 1023 (N.D. Ill. 2017) (construing claim as alleging delay because plaintiff did not assert that the air carrier failed to perform its obligation to transport him, only that it failed to do so on time).

In this case, Plaintiffs have alleged that Lufthansa informed them the delay would be finite, yet Plaintiffs elected to find alternative transportation without waiting to be rebooked. Accordingly, this claim should be construed as one for delay, not non-performance.

Because Plaintiffs have failed to plead a claim under Articles 17 or 19 of the Montreal Convention, this action should be dismissed.

## II

**Notwithstanding the applicability of the Montreal Convention, Plaintiffs' other federal claims are not recoverable.**

A. **There is no dispute that the conduct alleged to be in violation of Title VI occurred in Frankfurt, Germany.**

As set forth in its opening papers, Plaintiffs cannot pursue a claim under Title VI of the Civil Rights Act because Plaintiffs have not alleged that Lufthansa receives "Federal financial assistance" and because the alleged incident giving rise to this claim occurred outside the United

States.  42 U.S.C. § 2000d.

Plaintiffs simply do not address the fact that they did not allege that Lufthansa receives federal financial assistance.

As to the issue of the locus of the incident, Plaintiffs assert, without support, that discovery might reveal "the location of residence of Defendant's agents and employees, [and] where exactly Defendant's policies are generated, designed, ratified, and implemented."  As a preliminary matter, the gravamen of the Complaint is that Plaintiffs experienced discrimination in Germany; there is no allegation that Plaintiffs were in the United States when they experienced discrimination, nor is there any allegation that discriminatory conduct occurred in the United States.  Furthermore, there is no legal support for the proposition that the location of an organization's employees or policies in the United States is germane to the applicability of Title VI.

The two cases cited by Plaintiffs on the issue of extraterritoriality are inapposite because they concerned claims arising under Title IX of the Civil Rights Act or the Americans with Disabilities Act, and because they involved study abroad programs run by American universities; the latter case did not even address the issue of extraterritoriality.  *King v. Bd. of Control of E. Mich. Univ.*, 221 F. Supp. 2d 783, 791 (E.D. Mich. 2002); *Bird v. Lewis & Clark Coll.*, 104 F. Supp. 2d 1271 (D. Or. 2000), *aff'd*, 303 F.3d 1015 (9th Cir. 2002).

Because Plaintiffs have not alleged that Lufthansa receives federal funds or that they experienced discrimination in the United States, Plaintiffs have failed to state a claim under Title VI.

**B.**     **There is no private right of action under 22 U.S.C. §§ 2731 or 6412.**

No court has held that 22 U.S.C. §§ 2731 or 6412 provides for a private right of action.

In fact, no court has even interpreted these statutes, ostensibly because these statutes direct the Department of State to take action and have no place in litigation between private parties.

Congress must create a private right of action to enforce a federal law. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When interpreting a federal statute, courts consider not only whether a private right of action exists, but also a private remedy. *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). "Statutory intent" on the question of a private remedy "is determinative," and "[w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985)).

Sections 2731 and 6412 are silent as to both a private right of action and a private remedy. Rather, they instruct the Department of State to take certain action. While it is true that the goal of the statutes is to combat anti-Semitism, neither the statutes nor their legislative history reveal an intention to create a private right of action or private remedy.

The two cases Plaintiffs cite are inapposite, as they deal with the question of whether a party can proceed under a theory of negligence *per se* on the ground that the other party had violated a New York law with which the latter had been required to comply. *See German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1395-96 (S.D.N.Y. 1995) (concerning defendant's alleged violations of the New York City Administrative Code); *Dance v. Town of Southampton*, 95 A.D.2d 442, 445 (2d Dep't 1983) (concerning plaintiff's alleged violations of certain reporting statutes in the New York Vehicle and Traffic Law). By contrast, Sections 2731 and 6412 are federal laws, they do not require Lufthansa to undertake any action, and they are entirely silent on the issue of private right of action or private remedy. *See generally Lynda v.*

*JetBlue Airways Corp.*, No. 20-cv-47 (BMC), 2020 WL 3104069, at *2 (E.D.N.Y. June 22, 2020) (rejecting pre-*Sandoval* cases holding that a private right of action existed).

Thus, Sections 2731 and 6412 do not create a private right of action.

For these independent reasons, Plaintiffs' claims under Title VI and 22 U.S.C. §§ 2731 and 6412 should be dismissed.

### III

### **Plaintiffs should not be permitted to replead.**

Plaintiffs assert that they "reserve their right" to file a second amended complaint at some point in the future or if the Court grants the instant motion.[3] To the extent this assertion is construed as a request for leave to amend to avoid dismissal of this action, Defendant respectfully submits that such leave should be denied because Plaintiffs have not specified "how amendment would cure the pleading deficiencies in the complaint." *TechnoMarine S.A. v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999).

Here, Plaintiffs do not identify any additional facts they would allege in a second amended pleading that would give rise to a cognizable claim, let alone explain how such additional facts would establish a claim that would survive a motion to dismiss. Indeed, Plaintiffs have expressly stated that the Montreal Convention does not apply to their claims, which suggests they have no intention to plead the Montreal Convention in the alternative.

---

[3] Plaintiffs previously represented to the Court that they intended to further amend the Complaint by July 15, 2022. Dkt. 9. Plaintiffs did not do so.

Even if Plaintiffs sought leave to amend to allege a claim under Article 17 of the Montreal Convention, such leave should be denied as futile. "An amendment is futile if the 'proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)' of the Federal Rules of Civil Procedure." *See Gala v. City of New York*, No. 20-cv-5549 (BMC), 2021 WL 1700315, at *1 (E.D.N.Y. Apr. 29, 2021) (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). In this case, Article 17 of the Montreal Convention requires a plaintiff to show he sustained a physical injury as the result of an accident. Plaintiffs did not sustain a bodily injury in this case. Because a claim arising under Article 17 would not include this essential element required to establish liability, it would not survive a motion to dismiss. *See generally King*, 284 F.3d at 359 (noting that plaintiffs "would not be able to maintain an action under Article 17 for non-bodily injuries stemming from the discriminatory bumping" from their flight).[4]

For these reasons, Defendant respectfully submits that the Court should not grant leave to further amend the Complaint.

## Conclusion

For the foregoing reasons, Defendant Deutsche Lufthansa AG respectfully requests that this Court grant its motion and dismiss the First Amended Complaint with prejudice.

Dated: August 19, 2022
      New York, New York

                                    Respectfully submitted,

                                    CONDON & FORSYTH LLP

                                    By_____
                                        Anthony U. Battista (AB 0783)
                                        Marissa N. Lefland (ML 5375)

---

[4] To the extent Plaintiffs seek leave to assert a claim under Article 19 of the Montreal Convention, their damages would be limited to their provable economic injuries up to 5,346 Special Drawing Rights – approximately $7,040.

Times Square Tower
7 Times Square, 18th Floor
New York, New York 10036
Tel: (212) 490-9100
abattista@condonlaw.com
mlefland@condonlaw.com

*Attorneys for Defendant*
DEUTSCHE LUFTHANSA AG