UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
MORDECHAI KLEIN and CHAIM MEYER                             :
KLEIN,                                                      :    **MEMORANDUM DECISION AND**
                                                            :    **ORDER**
                        Plaintiffs,                         :
                                                            :    22-cv-02957 (BMC)
            - against -                                     :
                                                            :
LUFTHANSA AG, et al.,                                       :
                                                            :
                        Defendants.                         :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs Mordechai and Chaim Meyer Klein bring this action under federal and New York law, alleging that Lufthansa prevented them from boarding a flight because they are Jews. However, as defendants correctly argue, plaintiffs' claims are preempted under the Montreal Convention.[1] Defendants' motion to dismiss is therefore granted.

## BACKGROUND

The allegations of the complaint are deemed true for purposes of this motion.

On May 4, 2022, plaintiffs, two Jewish individuals, began their trip to Kerestir, Hungary to attend a memorial pilgrimage held in honor of Rabbi Yeshaya Steiner. Plaintiffs were traveling with a large group of other Jewish passengers headed on the same pilgrimage. The group's trip was to proceed in two legs. For the first leg of the trip, plaintiffs traveled from John F. Kennedy International Airport to Frankfurt Airport on Lufthansa Flight 401. Plaintiffs' itinerary called for them to board a connecting flight from Frankfurt to Budapest.

---

[1] In addition to Lufthansa AG and Lufthansa Airlines, plaintiffs also bring claims against Frankfurt Airport and Fraport AG Frankfurt Airport Services Worldwide, the latter two of which have not been served nor appeared.

At the time of their trip, Lufthansa had a policy in place mandating that all passengers wear masks throughout the duration of all flights. Although plaintiffs wore masks the entire first flight, other members of their group, as well as unrelated passengers, did not. Flight attendants on that first flight became frustrated by the lack of compliance with the mask requirement, as well as with some Jewish passengers who were blocking the aisles to pray.

After landing at Frankfurt Airport, plaintiffs proceeded to the boarding gate for Lufthansa Flight 1334, Frankfurt to Budapest. But when the Lufthansa desk agents began calling passengers' names to board, the desk agents permitted only non-Jewish passengers to board. The gate staff rejected persons with Jewish-sounding names or appearances, including plaintiffs. Plaintiffs were told that this was because of their group's non-compliance with the mask requirement, even though (1) plaintiffs had complied with the mask requirement; and (2) the desk agents permitted non-Jewish passengers who had not complied with the mask requirement to board. Ultimately, plaintiffs and the other Jewish passengers were informed that "the remaining travelers would not be included on the flight and the travelers were banned from the airline for the day." Flight 1334 departed without them.

Plaintiffs, worried that they would not make it to the pilgrimage on time, then "attempted to take alternative routes." Although it is not clear from the face of the complaint what alternative route plaintiffs took, some other passengers in their group were rebooked on "other Lufthansa flights after paying a fare difference because Flight 1334 had not been cancelled." Upon return, plaintiffs were required to pay for a new flight home, since they had not completed the outbound flight on Lufthansa, thus invalidating their return ticket.

Plaintiffs bring this class action lawsuit, alleging that the discriminatory actions against them and the putative class members prevented them from embarking and reaching their

destination. Defendants have moved to dismiss, arguing that plaintiffs' claims are preempted by the Montreal Convention, among other arguments.

## DISCUSSION

### I. The Montreal Convention

Defendants' main basis for dismissal is that the Montreal Convention preempts plaintiffs' state law claims and is preclusive of their federal claims. The Montreal Convention is a multilateral treaty that "applies to all international carriage of persons, baggage or cargo performed by aircraft." Convention for the Unification of Certain Rules for International Carriage by Air, ch. I, art. 1, § 1, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000). As both Germany and the United States are signatories to the Montreal Convention, and plaintiffs were traveling internationally, the Convention applies here.[2]

The principal goal of the Montreal Convention is to "limit airline accident liability while protecting the rights of passengers and shippers utilizing international air carriage." Seagate Logistics, Inc. v. Angel Kiss, Inc., 699 F. Supp. 2d 499, 505 (E.D.N.Y. 2010). To that end, where an action for damages falls within one of the Montreal Convention's three damage provisions, "the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." Weiss v. El Al Israel Airlines, Ltd., 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006); see also Mullaney v. Delta Air Lines, Inc., No. 08-cv-7324, 2009 WL 1584899, at *1

---

[2] The Montreal Convention succeeds the Warsaw Convention, which was an international treaty created in the early days of air travel to create conditions under which the then extremely fragile airline industry could grow, by limiting airline accident liability. See Andreas Lowenfeld and Allan Mendelsohn, The United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 498–502 (1967). "Although the Montreal Convention replaced the Warsaw Convention, since many similar provisions remain, courts use cases interpreting the Warsaw Convention to interpret similar Montreal Convention provisions." Seales v. Panamanian Aviation Co. Ltd., No. 07-cv-2901, 2009 WL 395821, at *8 n. 8 (E.D.N.Y. Feb. 18, 2009).

(S.D.N.Y. June 3, 2009) ("Due to the preemptive nature of the Convention, claims that fall within its parameters cannot be the subject of lawsuits pursuing other theories of recovery, state or federal."); Sanches-Naek v. TAP Portugal, Inc., 260 F. Supp. 3d 185, 192 (D. Conn. 2017) ("The Second Circuit has held that federal civil rights and discrimination claims . . . are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope").

The Montreal Convention's three preemptive damage provisions are in Articles 17, 18, and 19, respectively: 1) death or bodily injury suffered by an airline passenger or the destruction, loss of or damage to baggage, provided that the harm occurred onboard or in the process of embarking or disembarking; 2) loss or destruction of baggage or other cargo sustained during carriage by air, subject to certain exclusions; and 3) delay in the carriage of passengers, baggage or cargo. See Kamanou–Goune v. Swiss Int'l Airlines, No. 08-cv-7153, 2009 WL 874600, at *4 (S.D.N.Y. Mar. 27, 2009).

Plaintiffs here have not alleged any bodily injuries so, by its terms, Article 17 does not appear applicable. However, courts have determined that "this restriction on liability affects neither the analysis of the substantive scope of the provision nor its preemptive effect." King v. Am. Airlines, Inc., 284 F.3d 352, 359 (2d Cir. 2002). Therefore, even where a plaintiff cannot "maintain an action under Article 17 for non-bodily injuries stemming from [] discriminatory bumping," such claims are still "preempted if [they] arose from events that took place during embarkation." Id.

To get around this, plaintiffs argue that they were not in the process of embarkation because, among other reasons, they were not actually on the plane itself. The Second Circuit has adopted a flexible approach for deciding whether a passenger is "in the course of any of the

4

operations of embarking" within Article 17 when the injury allegedly occurred. Courts consider four factors: "(1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; (4) the physical proximity of the passengers to the gate." Buonocore v. Trans World Airlines, Inc., 900 F.2d 8, 10 (2d Cir. 1990). "It is the situs of the alleged accident, as opposed to the location of the alleged damage sustained that is critical." Hunter v. Deutsche Lufthansa AG, 863 F. Supp. 2d 190, 206 (E.D.N.Y. 2012).

In Buonocore, the Second Circuit, applying these factors, found that the accident did not occur during embarkation because it occurred "some distance away from the counter toward a mobile snack cart" and "in the public area of the airport," approximately two hours prior to the flight's departure and before the plaintiff had gone through either immigration control or security inspections. Buonocore, 900 F.2d at 10. Conversely, in Day v. Trans World Airlines, Inc., 528 F.2d 31, 32 (2d Cir. 1975), the Second Circuit reached the opposite conclusion, finding that the accident had occurred during embarkation because the plaintiff was in line at his gate, within mere minutes of boarding the flight.

The allegations in this case more closely mirror those in Day. Plaintiffs were denied boarding at their gate after their names were called by the desk agent during the boarding process. As it was only after the desk agent saw them that they were rejected, plaintiffs necessarily had to have presented themselves at the gate to the agent for boarding. Therefore, all four of the Buonocore factors – location, activity, control, and imminence – compel the conclusion that they were "in the course of any of the operations of embarking" when the alleged actions giving rise to their claims took place. See also Kruger v. Virgin Atl. Airways, Ltd., 976 F. Supp. 2d 290, 320 (E.D.N.Y. 2013) (applying the Buonocore factors, courts in this Circuit

5

"have consistently held that Article 17 covers injuries sustained close in time to the boarding process and in areas that are near departure gates and limited to ticketed passengers.").

As the incident falls within the substantive scope of Article 17 of the Montreal Convention, plaintiffs' claims are preempted.[3]  See Sanches, 260 F. Supp. 3d at 192 ("The Second Circuit has held that federal civil rights and discrimination claims . . . are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope.").[4]

## CONCLUSION

Defendants' motion to dismiss the complaint is granted.  If plaintiffs wish to pursue a claim under the Montreal Convention, they may file an amended complaint so stating within 10 days of entry of this decision.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       August 20, 2022

---

[3] As the Court finds that the Montreal Convention is applicable, the Court will not address in detail defendants' alternative arguments for dismissal.  However, the Court agrees that plaintiffs could also not sustain their federal claims under these statutes.  First, plaintiffs' Title VI cannot be sustained because the statute is only applicable to those incidents that occur "in the United States" and then only with respect to those organizations that "receive Federal financial assistance." 42 U.S.C. § 2000d.  This incident occurred overseas, and defendants are not alleged to receive such assistance.  Second, Title VII only prohibits discrimination in "employment practice[s]," 42 U.S.C. § 2000e-2(a), and plaintiffs were not employees of defendants.  Nor do 22 U.S.C. §§ 2731 or 6412 provide a private right of action to litigants who allegedly experience anti-Semitism.  See Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 432 (2d Cir. 2002) (courts "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.").

[4] The Court need not determine whether plaintiffs' injuries are also preempted under Article 19.

6